UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BURTON DAY,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>DOLLY MATTEUCCI,<br><br>　　　　Respondent. | No. 2: 15-cv-2560 JAM KJN P<br><br>FINDINGS & RECOMMENDATIONS |

I. Introduction

　　　Petitioner is proceeding, without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 2004, petitioner was committed to the California Department of State Hospitals ("DSH") for a term not to exceed life after having been found not guilty of attempted murder by reason of insanity. Petitioner is currently in the custody of DSH and housed at Napa State Hospital.

　　　In the instant petition, petitioner argues that the procedures for seeking restoration of sanity set forth in California Penal Code § 1026.2 are unconstitutional, and he should not be required to abide by them. (ECF No. 1 at 11.) Petitioner alleges that his continued confinement, without the existence of any symptoms of his mental disorder, violates his right to due process. (Id. at 13.) Petitioner also argues that his placement in outpatient status, under these circumstances, would also violate his right to due process. (Id. at 14.) Petitioner seeks an order

finding that his sanity is fully restored and directing respondent to immediately release him from DSH.

For the reasons discussed herein, the undersigned recommends that the petition be denied on the grounds that petitioner lacks standing.

II. Legal Background

In order to put petitioner's claims in context, the undersigned first sets forth the relevant California law regarding restoration of sanity.

A person committed to a state hospital or other treatment facility under the provisions of California Penal Code § 1026 shall be released from the state hospital or other treatment facility only under one or more of the following circumstances: (1) pursuant to the provisions of Section California Penal Code § 1026.2; (2) upon expiration of the maximum term of commitment as provided in California Penal Code § 1026.5(a), except as such term may be extended under the provisions of § 1026.5(b); and (3) as otherwise expressly provided in Title 15, commencing with Section 1600, and California Penal Code §§ 1600 et. seq. See People v. Stockman, 2014 WL 1293449 at *3 (Cal. App. 2014).

In the instant case, petitioner argues that he should not be required to follow the procedures for restoration of sanity set forth in California Penal Code § 1026.2, i.e, the first option discussed above.

"'Section 1026.2 involves what has been described as a two-step process.'" People v. Stockman, 2014 WL 1293449 at *3 (quoting People v. Soiu, 106 Cal.App.4th 1196 (Cal. App. 2003)). "'The first step in the release process requires the defendant, who has filed a release application, to demonstrate at a hearing that he or she will not 'be a danger to the health and safety of others, due to mental defect, disease, or disorder, [if] under supervision and treatment in the community.'" Id. (quoting People v. Soiu, 106 Cal.App.4th at 1196); see also Cal. Penal Code § 1026.2(e). "'If the court finds such at the hearing, the defendant is then placed in "an appropriate forensic conditional release program for one year."'" Id. (quoting People v. Soiu, 106 Cal.App.4th at 1196) (quoting Cal. Penal Code § 1026.2(e)).) "This is commonly called the outpatient placement hearing.'" Id. (quoting People v. Soiu, 106 Cal.App.4th at p. 1196).

"'The second step in the release process, often referred to as the restoration of sanity trial, normally occurs one year after the defendant has been placed in an outpatient program.'" Id. (quoting People v. Soiu, 106 Cal.App.4th at 1196). "'Unlike during the first step in the proceedings, the restoration of sanity trial requires the defendant to demonstrate that he or she is no longer a danger to the health and safety of others under all circumstances.'" Id. (quoting People v. Soiu, 106 Cal.App.4th at 1196).

III. Background

In February 2007, petitioner filed a motion to modify his placement to an outpatient program pursuant to California Penal Code § 1603.[1] See People v. Day, 2009 WL 1460830 at *1 (Cal. App. 2009). The Superior Court denied this motion. Id.

Petitioner appealed the denial of his motion by the Superior Court. On May 26, 2009, the California Court of Appeal affirmed the Superior Court's decision. Id. The opinion of the California Court of Appeal affirming the Superior Court summarizes the facts underlying petitioner's conviction. Petitioner does not appear to dispute this summary, which follows herein:

> In 1985, defendant was convicted of assault with a deadly weapon on a peace officer and resisting arrest, and was sentenced to four years in state prison. [Footnote 2.] While in prison, defendant committed battery on a correctional officer. He violated parole more than once and was ultimately sent to Atascadero State Hospital as a mentally disordered offender. He was transferred to Yolo County CONREP in June 1995 and discharged from that program in December 1996, thereafter continuing outpatient services through county mental health.
>
> [Footnote 2: Defendant was initially sent to Atascadero State Hospital pursuant to section 1370, where he was certified competent to stand trial. (§ 1372.)]

---

[1] "The section 1026.2 process is distinct from, and should not be confused with, the process under title 15 and section 1600 et seq." People v. Stockman, 2014 WL 1293449 at *4. "Under the title 15 procedure, 'a defendant may be placed on outpatient status if the director of the state hospital and the community program director so recommend, and the trial court approves the recommendation after hearing.'" Id. (quoting People v. Sword, 29 Cal.App.4th 614, 620 (1994)). "A defendant is not empowered, him or herself, to seek outpatient status under title 15, and indeed the status is a '"discretionary form of treatment to be ordered by the committing court only if the medical experts who plan and provide treatment conclude that such treatment would benefit the [offender] and cause no undue hazard to the community."'" Id. (quoting People v. Sword, 29 Cal.App.4th at 620) (quoting People v. Wymer, 192 Cal.App.3d 508, 513 (1987).)

3

> In October 2002, defendant waged a campaign of threats against Gary Sandy, former mayor of Woodland, including: leaving telephone messages threatening to kill Sandy; requesting that a local newspaper transmit a message to the Hell's Angels street gang to "eliminat[e]" certain people, including Sandy's family; going to Sandy's office and throwing a hammer through a glass window in the office; using his position as an official with the Libertarian Party to obtain Sandy's home address through voter registration records; and going to Sandy's home, telling Sandy he was going to kill him and attacking Sandy with a two-foot dowel, injuring him. Sandy, along with several other people, was able to restrain defendant until police arrived. Defendant was arrested, but continued to threaten Sandy while in custody.
>
> Defendant was charged with attempted first degree murder while personally using a deadly weapon, first degree burglary, criminal threats, vandalism, perjury, and stalking. He pleaded not guilty by reason of insanity and waived his right to a jury trial. Based on the facts as stipulated to by the parties, the court found defendant guilty of attempted first degree murder (and found that he had personally used a deadly weapon in the commission of the offense) and stalking, and found defendant's prior conviction true. The trial court found defendant not guilty by reason of insanity. Defendant was committed to Napa State Hospital in February 2004 for a term of confinement not to exceed life.

People v. Day, 2009 WL 1460830 at *1 (Cal. App. 2009).

On December 6, 2011, petitioner was discharged to an outpatient program, pursuant to California Penal Code § 1604. (ECF No. 18 at 26; ECF No. 18 at 60 (order by Yolo County Superior Court to place petitioner in conditional release program pursuant to Cal. Penal Code §§ 1604/1026.)) Petitioner remained in the outpatient program for nine months. (ECF No. 18 at 26.) Petitioner was arrested in September 2012, and readmitted to Napa State Hospital on October 5, 2012. (Id.)

On February 27, 2014, petitioner filed a habeas corpus petition in the Yolo County Superior Court raising the same claims as are raised in the instant petition. (Id. at 33 (order denying petition by Superior Court).) On May 22, 2014, respondent filed a response to this state court petition. (Id. at 23-31.) In the response, respondent described the procedures for seeking restoration of sanity pursuant to California Penal Code § 1026.2. (Id. at 23-24.) Respondent then argued that petitioner was trying to create an exception to these procedures for himself, "effectively creating an end-run around the statutory standards for" a finding of restoration of sanity. (Id.) Respondent also argued that habeas corpus should not serve as a substitute for the

4

statutory procedure set forth in California Penal Code § 1026.2. (Id.) Respondent also attached a report from Napa State Hospital regarding petitioner, dated March 3, 2014. (Id. at 26-30.) The report stated that petitioner did not meet the criteria for outpatient treatment as provided for in California Penal Code § 1603. (Id. at 26.) The report stated that petitioner was medication compliant, but in recent months had stopped attending relevant groups and no longer worked on or practiced his recovery action plan. (Id. at 28-29.)

On June 18, 2014, the Yolo County Superior Court denied the petition. (Id. at 33-37.) The Superior Court stated that petitioner sought an evidentiary hearing to establish that his sanity had been restored. (Id. at 33.) "He contends that he has been symptom free for over ten years and the treatment he received at Napa State Hospital and through the CONREP outpatient program, other than medication, has been ineffective." (Id.) "He contends that he is not a danger to himself or others and/or that he no longer has a mental illness." (Id.)

The Superior Court then described the procedures for restoration of sanity contained in California Penal Code § 1026.2. (Id. at 33-35.) The Superior Court then observed that the March 3, 2014 report from Napa State Hospital stated that petitioner did not intend to go into an outpatient program and was hoping to leave the hospital directly. (Id. at 35.) The Superior Court noted that petitioner had not completed the one year of outpatient status required under California Penal Code § 1026.2(e). (Id.) "Thus, he does not meet the statutory requirements to proceed to the second step under section 1026.2, the restoration of sanity trial." (Id.)

> None of the authorities cited by Petitioner support the conclusion that the outpatient program required by section 1026.2 may be waived or excused as he asserts. Petitioner argues that in In re Ingram (1978) 76 Cal.App.3d 495, stands for the proposition that he can obtain an unconditional release through a writ of habeas corpus. The court in Ingram ruled that the petitioner was entitled to a judicial determination of the question as to whether he presently is receiving at the state hospital such individual treatment as will give him a realistic opportunity to be cured or to improve his mental condition, that is, whether he was receiving at the hospital treatment that was within relevant constitutional bounds.
>
> The report from Napa State Hospital states that petitioner has programs available to him and he chooses not to participate in the programs. His circumstances are not similar to those of the petitioner in Ingram.

5

> The confinement of Petitioner is lawful. His petition for writ of habeas corpus is denied.

(Id. at 36.)

Petitioner later filed a second petition in the Yolo County Superior Court raising the same claims as were raised in the first petition. (ECF No. 1 at 56.) On March 11, 2015, the Yolo County Superior Court denied this petition as duplicative of the prior petition. (Id.)

Petitioner filed a habeas corpus petition with the California Court of Appeal. On July 2, 2015, the California Court of Appeal denied the petition without comment or citation. (Id. at 55.) Petitioner filed a habeas corpus petition with the California Supreme Court. On November 24, 2015, the California Supreme Court denied the petition without comment or citation. (Id. at 54.)

IV. Discussion

At the outset, the undersigned clarifies petitioner's claims. Petitioner claims that he should not be required to follow the procedures set forth in California Penal Code § 1026.2 for establishing restoration of sanity because he is sane. Petitioner also argues, in essence, that requiring him to spend one year in a conditional release program if his initial application is granted is unconstitutional because it amounts to continued confinement of a sane person.[2]

In the answer, respondent first argues that petitioner lacks standing to challenge the constitutionality of the procedures set forth in California Penal Code § 1026.2, for releasing insanity acquittees, because he does not have a pending application for release. In support of this argument, defendants cite Hartman v. Summers, 120 F.3d 157 (9th Cir. 1997). For the reasons

---

[2] In the reply to the answer, petitioner also argues that his right to Equal Protection is violated because other insanity acquittees have been released without having to go through the procedures set forth in California Penal Code § 1026.2. (ECF No. 8-9.) Petitioner cites six individuals who he claims were released without filing applications pursuant to Section 1026.2. (Id.) "The Equal Protection Clause...commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citation omitted). Assuming that the six individuals identified by petitioner were released without having to go through the procedures set forth in California Penal Code § 1026.2, petitioner has pled no facts demonstrating that he and these six other individuals are similarly situated. These conclusory allegations do not demonstrate a violation of the Equal Protection Clause. See Venture Mobilehome Comtys. Owners Ass'n v. City of San Buenaventura, 371 F.3d 1046, 1055 (9th Cir. 2004).

6

stated herein, the undersigned finds that petitioner lacks standing, pursuant to the Ninth Circuit's reasoning in Hartman v. Summers.

In Hartman, the petitioner was found not guilty by reason of insanity and was committed to Patton State Hospital. 120 F.3d at 158. The petitioner filed habeas corpus petitions in the San Bernardino County Superior Court and the California Supreme Court, which were denied. Id. Petitioner filed a habeas corpus petition in the United States District Court. Id. In his federal petition, in relevant part, petitioner argued that California's statutory scheme for releasing insanity acquittees, set forth in California Penal Code § 1026.2, violated the Due Process and Equal Protection Clauses of the United States Constitution. Hartman v. Summers, 878 F.Supp. 1335, 1337 (C.D. Cal. 1995). The petitioner's constitutional challenge to Section 1026.2 was based "almost entirely upon his reading of the decision in Foucha v. Louisiana, 504 U.S. 71 (1992)." Id. at 1349.

"In Foucha, the Supreme Court struck down a Louisiana statute that permitted the state to confine insanity acquittees for an indefinite duration based on the ground of 'dangerousness' alone." Id. at 1341. "In other words, the Louisiana statute provided for the continued confinement of insanity acquittees who were not mentally ill but who could not prove that they were no longer dangerous." Id. "A majority held that the statute violated the Due Process Clause of the Fourteenth Amendment, and a plurality concluded that the statute also violated the Equal Protection Clause of the Fourteenth Amendment." Id.

In Hartman, the petitioner argued that Section 1026.2 permitted his continued commitment to a mental hospital despite the fact that he was no longer a danger to himself. Id. The district court found that § 1026.2 did not violate Foucha because, in 1993, California amended this law to allow continued confinement of an insanity acquittee only if he would pose a danger to the community due to a mental disease. Id. at 1342. The district court found that § 1026.2 did not violate the Equal Protection or Due Process Clauses of the Constitution.

On appeal, the Ninth Circuit found that the petitioner lacked standing to raise his claims challenging the constitutionality of California Penal Code § 1026.2. "The doctrine of standing is comprised of both Article III requirements and prudential considerations." Hartman, 120 F.3d at

7

159 (citing <u>LaDuke v. Nelson</u>, 762 F.2d 1318, 1323 (9th Cir. 1985), am. 796 F.2d 309 (9th Cir. 1986)). "Standing generally requires a showing of three elements:  1) injury in fact where plaintiff/petitioner has suffered actual loss, damage, or injury, or is threatened with impairment of interests; 2) causal connection between the injury and the conduct complained of; and 3) likelihood that the injury will be redressed by a favorable decision. <u>Id.</u> at 159-60 (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)).

"To confer standing, the threat of future injury must be credible rather than remote or hypothetical." <u>Id.</u> at 160 (citing <u>Nelsen v. King County</u>, 895 F.2d 1248, 1250 (9th Cir. 1990)). "Petitioner must show a very significant possibility that the future harm will ensue." <u>Id.</u> (citing <u>Nelson</u>, 895 F.2d at 1260). "In <u>Lujan</u>, the Supreme Court held that the plaintiffs did not have standing because they did not suffer an 'injury in fact.'" <u>Id.</u> (citing <u>Lujan</u>, 504 U.S. at 564). "The plaintiffs in <u>Lujan</u> were environmental groups who brought an action challenging the geographic scope of a regulation of the Secretary of Interior." <u>Id.</u> (citing <u>Lujan</u>, 504 U.S. at 559). "This regulation required other agencies to confer with the Secretary of Interior under the Endangered Species Act only with respect to federally funded projects in the United States and on the high seas, but not other countries." <u>Id.</u> (citing <u>Lujan</u>, 504 U.S. at 559). "Their claim to injury was that the lack of consultation would increase the rate of extinction of endangered and threatened species." <u>Id.</u> (citing <u>Lujan</u>, 504 U.S. at 563). "Affidavits had been filed by the plaintiffs' members stating that they intended to visit the foreign countries in the future." <u>Id.</u> (citing <u>Lujan</u>, 504 U.S. at 563–64). "The Supreme Court held: '[s]uch "some day intentions"—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of "actual or imminent" injury that our cases require.'" <u>Id.</u> (quoting Lujan, 504 U.S. at 564). "In turn, the federal courts lacked jurisdiction over the case." <u>Id.</u>

The Ninth Circuit found that similar to <u>Lujan</u>, "Hartman fails to state any definite plans to file an application for release under § 1026.2 which would make him subject to § 1026.2 and fulfill the 'injury in fact'/imminent harm requirement of Article III." <u>Id.</u> at 160. "Hartman bases his claim for immediate release on the grounds that § 1026.2 is unconstitutional." <u>Id.</u> "Nowhere in his petitions for writ of habeas corpus, however, does Hartman assert that he intends to begin,

8

or has begun, the procedure under § 1026.2." Id. "Because Hartman has failed to allege that he is subject to the release procedure that he complains of, he fails to show imminent injury." Id. "Under the Lujan analysis, Hartman lacks standing and this Court does not have jurisdiction to address his claims regarding the constitutionality of California's statutory scheme for releasing insanity acquittees." Id.

Like the petitioner in Hartman, petitioner in the instant case challenges the constitutionality of California Penal Code § 1026.2, although on different grounds. Similar to the petitioner in Hartman, petitioner does not have a pending application for release under California Penal Code § 1026.2. In addition, petitioner does not allege that he has filed an application for release that was wrongly denied. In the answer, respondent states that "[i]t appears from respondent's inquiries that, since his termination from CONREP in September 2012, Day has filed at least two applications for restoration of sanity. In both cases, Day withdrew his applications prior to their adjudication." (ECF No. 18 at 5 n. 1.) Petitioner offers no evidence that any application filed by him pursuant to Section 1026.2 has been denied.

The undersigned also observes that the May 26, 2009 order by the California Court of Appeal affirming the Superior Court's denial of petitioner's February 2007 motion to modify his placement to a conditional release program, states that in October 2007 petitioner filed an application for release based on restoration of sanity pursuant to California Penal Code § 1026.2.[3] (ECF No. 18 at 18.) The record before the undersigned contains no evidence regarding the resolution, if any, of petitioner's application for release filed in October 2007. Neither petitioner nor respondent discuss this application. For these reasons, the undersigned finds that the October 2007 application for release, mentioned in the opinion of the California Court of Appeal, does not give petitioner standing to raise the claims brought in the instant petition. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (the party assertion claims in federal court bears the burden of

---

[3] The California Court of Appeal's opinion states that it is reviewing petitioner's appeal of the denial of his motion brought pursuant to California Penal Code § 1603. (ECF No. 18 at 17.) The opinion does not state that the Superior Court also considered petitioner's motion brought pursuant to California Penal Code § 1026.2, or that the Court of Appeal otherwise considered petitioner's motion brought pursuant to this section.

establishing standing).

For the reasons discussed above, petitioner lacks standing to raise his claims challenging the constitutionality of California Penal Code § 1026.2.

Respondent also argues that petitioner's claims lack merit. Because petitioner lacks standing, this court does not have jurisdiction to consider the merits of his claims. Hartman, 120 F.3d at 160.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 3, 2018

*[signature]*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Day2560.157